# 𝔅𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

## TILLAR v. COOK AND ALS.

### May 3d, 1883.

1. *Equity jurisdiction and relief—Account.*—The jurisdiction of courts of equity in matters of account, is among the most comprehensive they have assumed. Matters of account are *per se* within the scope of their jurisdiction. They have concurrent jurisdiction therein with courts of law; but the difficulty of proceeding in the latter, and the convenience of proceeding in the former, where a discovery may be had on the defendant's oath, where a multiplicity of suits will be avoided, and where fraud, accident, or mistake is connected with the subject, causes them to be most commonly resorted to.

2. IDEM—*Partnership.*—Partnership relations between parties engaged under contract in a joint venture, gives jurisdiction to courts of equity. Such relations involve not merely a community of interests, but the employ-ment of a common stock, whether consisting of property, or mere labor and skill, in a common undertaking with a view to a common profit. Before the interest of an individual partner can be ascertained, an ac-count of the business, the assets and the liabilities must be taken, so that the divisible surplus can be known. If a dissolution be sought, the common law courts .cannot afford relief. And so, also, a specific per-formance of the partnership may be compelled. One partner may be restrained from a course injurious to the rights of another, or depriving him of his due share in the direction of the business.

Appeal from decree of circuit court of Greensville county, rendered 23d April, 1879, in a chancery suit, wherein B. D. Tillar was plaintiff, and Fanny M. Cook, and W. S. Goodwyn and E. C. Tredway, trustees, and John Enders, *cestui que trust*, were defendants.

Said Tillar and Mrs. Cook formed a partnership to repair and run on common account, and for common profit, a mill. She furnished the mill, and he the money to repair and the labor

and skill to run it. The instrument evidencing the contract bears the form of a lease by her to him of the mill on the terms aforesaid. Both executed it, the arrangement to last so long as the mill could be profitably run. The mill, dam and race needed repairs, and Tillar expended thereon for that purpose, and for running the same, a large sum of money; whilst she received part of the profits and refused to apply it to the amount advanced by him for the repairs, or to render an account thereof. This contract was dated July, 1877. In February, 1879, she conveyed the mill property to Goodwyn and Tredway, trustees, in trust, to secure a large debt to John Enders; trustees and *cestui que trust* having full knowledge of the contract between her and Tillar. He instituted suit to compel proper accounts, specific performance of the contract of partnership, the appointment of a receiver, and the application of the assets to the payment of the amount due him for his advances; also to enjoin the defendants from receiving the rents and profits until the sum due him was fully paid, and for general relief. The defendants demurred to the bill. On hearing, the circuit court sustained the demurrer, and dismissed the bill with costs. From this decree Tillar obtained an appeal and *supersedeas* from one of the judges of this court.

*Friend & Davis,* and *Collier & Budd,* for the appellant.

*G. S. & D. M. Bernard, Reese & Tredway,* and *W. H. Briggs,* for the appellees.

LACY, J., delivered the opinion of the court.

In March, 1879, the appellant filed his bill in the circuit court of Greensville county, against the appellees, setting forth that in 1877, he had entered into a contract, which was recorded July, 1877, with Mrs. Cook, one of the appellees, by which it was mutually agreed between the contracting parties to enter into a

joint venture in the business of milling at the mill of the appellee Cook, and to divide equally between them, the profits of the said business; that the mill was to be repaired by the said appellant, and he was to be reimbursed out of the appellee, Cook's share of the profits of the business; that the mill was repaired; and a part of the proceeds received by one party, and a part by the other; that the repairs had been paid for only in part; that there were mutual and complicated accounts between the said parties; that the amounts received by the appellee Cook were not known to the appellant; that a large amount was due to the appellant, and praying that the contract might be specifically performed, an account taken between the parties concerning their mutual accounts, and a receiver appointed to wind up the said business. That the said appellee Cook had, with an intention to unjustly deprive the appellant of his rights in the premises, conveyed the mill-property to trustees, who were actually informed of the contract aforesaid, and who refused to respect in any way the rights of appellant under the said contract, and praying for general relief.

The appellee demurred to the bill, and the said circuit court sustained the demurrer and dismissed the bill, and the appellant applied to this court for an appeal, which was allowed.

The circuit court refused the relief prayed for on the ground that there was no jurisdiction in a court of equity to grant such relief.

The jurisdiction of equity in matters of account is among the most comprehensive of those which it has assumed. Tucker's Com., vol. 2, page 409. In matters of account courts of law cannot give so complete a remedy as equity. *Smith* v. *Marks*, 2 Rand. 452. Matters of account are *per se* within the scope of equitable jurisdiction. 2 Story's Eq. Jur., section 441. As courts of equity entertain concurrent jurisdiction to the fullest extent with courts of law, in matters of account, the decision as to the proper tribunal must be governed by consideration of convenience. *Ib.* 442 *a*; *Sheppard* v. *Brown*, 4 Giff. 208. In that case, a demurrer to a

bill seeking an account of goods sold by defendant, on which the plaintiff was entitled to a commission, was overruled with costs.

The difficulties of proceeding at law in matters of account, and the convenience of proceeding in suits in equity, to attain the ends of substantial justice, are stated in an elementary work of solid reputation with great clearness and force. The language of the learned author is as follows:

"The proceedings in this action being difficult, dilatory and expensive, it is now seldom used—if the demand be of consequence, and the matter of an intricate nature; for in such cases it is more advisable to resort to a court of equity, where matters. of accompt are more commodiously adjusted, and determined more advantageously for both parties, the plaintiff being entitled to a discovery of books, papers, and the defend ant's oath," &c. See Bacon's Abridgment, Accompt, &c. And it has been well observed by Mr. Blackstone, that notwithstanding all the legislative provisions in aid of the common law action of account, "it is found by experience that the most ready and effectual way to settle these matters of account, is by a bill in a court of equity, where a discovery may be had on the defendant's oath, without relying merely on the evidence which the plaintiff may be able to produce." 3 Blackstone's. Commentaries, 164.

The equities, where courts of ordinary jurisdiction cannot administer a right, are those for investigation of accounts, for winding up partnerships, &c. Adams' Equity, p. 442. In matters of account courts of equity possess a concurrent jurisdiction in most, if not in all cases with courts of law. *Mitchell* v. *Manufacturing Co.*, 2 Story, 648; *Post* v. *Kimberley*, 9 Johns. 470; *Jones* v. *Bullock*, 2 Dev. Ch. 368; *Seymour* v. *Long Dock Co.*, 20 N. J. Eq. 396; *Fowle* v. *Lawrason*, 5 Peters, 495; *Hickman* v. *Stout*, 2 Leigh, 6. And where a multiplicity of suits will be avoided, or where the remedy at law is not full and adequate, or fraud, accident or mistake, is connected with the subject. *McLearen* v. *Steapp*, 1 Kelly, 376. And between

partners and the assignees of their copartners. *Pendleton* v. *Wambersie*, 4 Cranch, 73; and *Randolph* v. *Kinney*, 3 Rand. 394.

It cannot be necessary to multiply citations on this subject. The jurisdiction of courts of equity in matters of account has been too long recognized and is too well established to admit of serious dispute; and the circuit court should have overruled the demurrer and decreed an account between the parties for the settlement of their mutual transactions; and having taken jurisdiction for this purpose, should have proceeded until complete relief had been afforded in the premises according to the respective rights of the parties. And, indeed, it is equally clear that the partnership relations of the parties, under their contract to engage in their joint venture aforesaid, was plainly a ground for equity jurisdiction. The equity for winding up a partnership business originates in the peculiar character of that relationship, as involving not merely a community of interest, but the employment of a common stock, whether consisting of property or mere labor and skill, in a common undertaking with a view to a common profit. Adams' Equity, p. 474. And before the interest of an individual partner can be known, an account must be taken of the business, the assets and the liabilities, so that the divisible surplus may be ascertained. The common law courts cannot take this account; if a dissolution as well as an account be sought, the common law jurisdiction is altogether excluded. The incapacity thus existing in the courts of law confers a jurisdiction on the court of chancery. A court of equity may compel specific execution of a partnership contract, and may restrain one partner from persisting in a course jeopardizing the rights of another, or depriving him of his due share in the direction of the business. *Gillett* v. *Hall*, 13 Conn. 426; *Pirtle* v. *Penn*, 3 Dana, 248. The appellant was entitled to have his case heard and decided by a court of equity upon the evidence adduced on both sides; the contract specifically performed, or the business wound up, as

might appear just and equitable upon a full hearing, and upon a settlement of the mutual accounts between the parties, the true balance decreed as should appear right upon the proofs in the case.

We are of opinion that the circuit court erred in sustaining the demurrer, and that the said decree must be reversed.

The decree is as follows:

This day came the parties by their counsel, and the court having maturely considered the transcript of the record of the decree aforesaid, and the argument of counsel, is of opinion, for reasons stated in writing and filed with the record, that the circuit court erred in dismissing the plaintiff's bill upon the demurrer of the defendant, and that, instead of doing so, the said court ought to have proceeded to adjudicate the rights of the parties to the cause. Therefore, it is decreed and ordered that the said decree appealed from be reversed and annulled, and that the appellees pay to the appellant his costs by him expended in the prosecution of his appeal aforesaid here, and that the cause be remanded to the said circuit court for further proceedings to be had therein to a final decree in accordance with the principles hereinbefore declared. Which is ordered to be certified to the said circuit court of Greensville county.

DECREE REVERSED.